IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


RUBY ELAINE BROOKS                                                    PLAINTIFF


        v.                                CIVIL NO. 06-4006


JO ANNE B. BARNHART, Commissioner
Social Security Administration                                       DEFENDANT


## MEMORANDUM OPINION

        Plaintiff Ruby Elaine Brooks brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for period of disability and disability insurance benefits (DIB)

under the provisions of Title II of the Social Security Act (Act).

## Procedural Background:

        Plaintiff protectively filed her DIB application on July 10, 2003, alleging an inability to

work since November 29, 2002. (Tr. 63-66). Plaintiff's applications were denied initially and on

reconsideration. (Tr. 35, 40). Pursuant to plaintiff's request, a hearing de novo before an

administrative law judge (ALJ) was held on June 30, 2004, at which plaintiff, represented by

counsel, appeared and testified. (Tr. 410-434).

        By written decision dated August 30, 2004, the ALJ found that plaintiff had an

impairment or combination of impairments that were severe. (Tr. 28). However, after reviewing

all of the evidence presented, he determined that plaintiff's impairments did not meet or equal

the level of severity of any impairment listed in the Listing of Impairments found in Appendix

I, Subpart P, Regulation No. 4.  (Tr. 28).  The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform the exertional requirements of a full range of sedentary work. (Tr. 28).  Specifically he found plaintiff could lift and/or carry five pounds frequently, ten pounds occasionally; to stand and/or walk two hours out of an eight-hour workday; and to sit six hours out of an eight-hour workday. (Tr. 28).  With the help of vocational expert testimony, the ALJ found plaintiff could perform her past relevant work as an accounts receivable clerk and a dispatcher. (Tr. 28).

Plaintiff appealed the decision of the ALJ to the Appeals Council.  After reviewing medical evidence submitted by plaintiff, the Appeals Council denied plaintiff's request for review of the hearing decision on December 19, 2005.  (Tr. 5-8). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner.  Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. # 9, 10).

**Evidence Presented:**

At the time of the administrative hearing on June 30, 2004, plaintiff was forty-four years of age and obtained a high school education. (Tr. 414-415).  Plaintiff's past relevant work consists of work as an account receivable clerk, a dispatcher and a sales clerk.  (Tr. 416-417). Plaintiff alleged her onset date to be November 29, 2002. (Tr. 416). Plaintiff testified she stopped working in November of 2002, because her employer downsized.  (Tr. 417).  She further testified at that time she was having difficulty performing the duties of her job because she was required to climb stairs every day which caused pain. (Tr. 418).  After plaintiff lost her job, she testified she tried to find a job and went on a few job interviews. (Tr. 422).

2

Plaintiff testified she sustained injuries from an automobile accident in 1992, which led to five or six surgeries on her right ankle. (Tr. 418).  At the time of the hearing, plaintiff testified that she used a cane to help with her mobility and weight bearing on her ankle. She testified she must prop up her ankle twice a day for a two to three hour period of time. (Tr. 426).  Plaintiff testified she also had problems associated with her left eye blindness and headaches. (Tr. 421-422). Plaintiff testified the stress caused by her impairments has resulted in her needing to take anti-depressant medication. (Tr. 422).  Plaintiff testified the pain in her ankle also negatively affects her ability to concentrate and to deal with people. (Tr. 423).

With regard to physical activities, plaintiff testified standing for long periods of time  and walking caused pain and swelling in her ankle. (Tr. 419-420). Plaintiff explained there were times when her ankle would "give way." (Tr. 420). Plaintiff testified sitting caused pain and tingling in her ankle. (Tr. 420-421). Plaintiff reported she could lift five pounds, walk less than a block, stand fifteen minutes and sit twenty to thirty minutes. (Tr. 430).

Plaintiff testified she also experiences side-effects from the medication she takes. (Tr. 426).

Ms. Dianne Smith, a vocational expert, testified plaintiff's past relevant work consists of work as an accounts receivable clerk, a dispatcher and a sales clerk. (Tr. 431).  After listening to the ALJ's hypothetical question,[1] Ms. Smith testified the hypothetical individual would be able to perform her past relevant work as an accounts receivable clerk and a dispatcher. (Tr. 432).

---

[1] The ALJ posed the following hypothetical to the vocational expert: a person who was limited to the performance of sedentary level work activity (Tr. 432).

AO72A
(Rev. 8/82)

The record reflects that during the relevant time period of November 29, 2002, through August 30, 2004, plaintiff sought medical treatment on the following occasions. On March 22, 2003, plaintiff sought treatment for sinus problems. (Tr. 257).  After examining plaintiff, Dr. Steven E. Kempson, assessed plaintiff with acute maxillary sinusitis and prescribed Avelox, Nasacort AQ nasal spray and Endal HD.  Plaintiff was directed to follow-up as needed.

On July 19, 2003, plaintiff sought treatment for cough and congestion for the past four days. Dr. Gregory A. Richter assessed plaintiff with nasopharyngitis. (Tr. 256).

Plaintiff entered the Christus St. Michael Health System (St. Michael) emergency room on January 8,2004, complaining of severe pain in the perineal area. (Tr. 298). Plaintiff reported her home medications to be Celebrex and Zoloft. (Tr. 298). Plaintiff was treated for a perineal abscess.  Discharge notes instruct plaintiff to take Vicodin HP every four hours as needed and Doxycycline twice a day until gone, to soak the area in warm water and return in two days. (Tr. 299). Plaintiff returned to the emergency room to have the packing removed on January 10, 2004.  (Tr. 300-307).

On January 24, 2004, plaintiff was admitted into St. Michael's after complaining of abdominal pain that had moved into the right lower quadrant. (Tr. 320).  Plaintiff underwent a CAT scan which revealed a thickened appendix with paracecal inflammation. (Tr. 330). At the time of admission plaintiff reported she had nerve problems but was not seeking treatment from a physician and was not taking any medication. (Tr. 320). Plaintiff underwent an appendectomy. (Tr. 371).

In a letter dated March 17, 2004, Dr. James S. Lillich, stated he examined plaintiff on February 12, 2004.  (Tr. 382).  Dr. Lillich stated plaintiff "presented with a solid ankle fusion,

4

but was still having some pain along the anterior aspect of the ankle." Dr. Lillich opined the pain was related to some extensive tendonitis and should resolve with the use of anti-inflammatory medication. Dr. Lillich instructed plaintiff to return if the anti-inflammatory medication did not work. Regarding plaintiff's ability to work, Dr. Lillich opined plaintiff could work in a light or sedentary category.  Dr. Lillich recommended plaintiff avoid any type of climbing, uneven surfaces and limit her standing and walking to less than four hours total per day. Dr. Lillich further recommended plaintiff refrain from any type of frequent squatting.

The record also includes medical evidence pertaining to treatment prior to the relevant time period and medical evidence submitted to the Appeals Council dated after the ALJ's decision. (Tr. 111-252, 254-288, 384-409).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

5

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

AO72A
(Rev. 8/82)

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*.  As the United States Court of Appeals for the Eighth Circuit  recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff originally alleged an inability to work due to residual pain resulting from an ankle injury in 1992, and blindness in her left eye. With regard to plaintiff's ankle impairment and pain, the record establishes plaintiff received disability benefits for the period of time from February 18, 1992, through October 27, 1993, when plaintiff medically improved to the extent that she could perform sedentary work.  (Tr. 20).  Plaintiff testified in June of 2004, that she was

7

unable to work as of November 29, 2002, due to her severe residual ankle pain.  In his decision, the ALJ found plaintiff's ankle impairment and resulting pain to be severe but not disabling.  In so doing, the ALJ points out plaintiff sought very little treatment for her alleged severe ankle pain during the relevant time period. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). Furthermore, in January of 2004, plaintiff reported she was not taking any medication for her alleged severe pain. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (failure to take pain medication is relevant to the credibility determination).

With regard to plaintiff's left eye blindness, the record reveals plaintiff has poor vision in her left eye. The record establishes plaintiff lost vision in her left eye when she was four years old. (Tr. 413).  Since that time plaintiff has been able to lead a normal life and to perform work despite poor vision in her left eye. We find substantial evidence to support the ALJ's determination that plaintiff's eye impairment does not limit plaintiff's ability to perform work.

With regard to a mental impairment, plaintiff argues the ALJ erred in failing to address plaintiff's alleged disabling mental and emotional problems.  We first note that plaintiff failed to raise the issue of her depression in her application for disability.  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001) (holding that fact that plaintiff did not allege depression in her application was significant).  While the record shows plaintiff has been prescribed medication to treat depression, it further reveals plaintiff responded well to the medication and reported improvement.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of

disability).  Plaintiff also reported that she was not taking any medication in January of 2004, and there is no evidence showing plaintiff sought on-going and consistent treatment for her depression.  We note that after the ALJ issued his decision, plaintiff submitted additional medical evidence to the Appeals Council regarding her depression. This medical evidence shows plaintiff did seek treatment for depression in September of 2004, soon after the ALJ's August 30, 2004, decision. We have considered this evidence but still find substantial evidence as a whole supporting the ALJ's decision.  We acknowledge that the evidence submitted to the Appeals Council includes evidence suggesting plaintiff has a severe mental impairment. It appears, however, that plaintiff did not develop this condition, or at least to this severity, until after the date of the ALJ's August of 2004 decision.

Plaintiff argues the ALJ failed to address plaintiff's complaints of joint pain and arthritis. In doing so, plaintiff points to medical records dates March 29, 2001. (Tr. 275-276).  At that time, plaintiff complained of the onset of joint pain and arthritis one to two weeks prior to the evaluation. In April of 2001, plaintiff was back to work and reported being "significantly better from a pain point of view." (Tr. 273). Plaintiff remained employed until her company downsized in November of 2002. So while plaintiff may indeed have been experiencing significant pain at the time of the evaluation, the record as a whole supports the ALJ's determination that plaintiff's pain was not so severe as to be considered disabling during the relevant time period.

Plaintiff testified that she experiences side effects caused by her medication. However, plaintiff failed to report these side effects to her treating physicians. *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult).

9

Plaintiff reported she was unable to perform many activities of daily living in a Supplemental Interview Outline dated July 14, 2003. (Tr. 96-100). The ALJ noted this outline but found that the record as a whole did not support plaintiff's allegations that she is unable to perform even the basic activities of daily living during the relevant time period. The ALJ noted the medical evidence failed to reveal any evidence indicating plaintiff was unable to perform activities of daily living. Furthermore, in March of 2004, Dr. Lillich opined that while plaintiff did have some limitations she could perform some light and sedentary work. (Tr. 382). We point out plaintiff also testified at the hearing that after she lost her job she looked for other employment and even went on a few job interviews. (Tr. 422). *See Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir.1994) (claimant's statements that he was seeking work inconsistent with disability).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all

10

relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).   RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a full range of sedentary work, the ALJ considered plaintiff's subjective complaints and the medical records of her treating and examining physicians. Specifically, the ALJ noted Dr. Lillich, plaintiff's treating orthopedic physician, examined plaintiff in February of 2004, and opined that plaintiff could perform sedentary to light work. Dr. Lillich opined plaintiff should avoid climbing, walking on uneven surfaces and standing and walking more than four hours per day.  In determining plaintiff's RFC the ALJ included all limitations set forth in Dr. Lillich's March of 2004 letter.

The medical evidence submitted to the Appeals Council includes a letter dated September 15, 2004, written by Dr. Charles T. Marrow, opining that plaintiff is unable to work.  Dr. Marrow did not include treatment notes in support of his opinions and we can find no support in the record for this conclusion. *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003) (holding that

11

ALJ did not err in failing to credit treating physician's opinion because those opinions were inconsistent and not fully supported by medical evidence); *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (while treating physicians' opinions are ordinarily entitled to great weight, they are not conclusive and must be supported by medically acceptable clinical or diagnostic data). Furthermore, it is the ALJ's duty to determine plaintiff's employability. *See Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1992.) (physician's conclusion that claimant was unemployable was not a medical opinion but a vocational conclusion outside physician's area of expertise). Therefore, based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination.

Next, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as she is able to perform her past relevant work as an accounts receivable clerk and a dispatcher. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

Finally, we reject plaintiff's contention that the ALJ failed to fully and fairly develop the record. The ALJ is required to develop the record fully and fairly even when a claimant has an attorney. *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision); *See Strongson v.*

12

*Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).  In the present case,  the record before the ALJ contained treatment notes and the March 17, 2004, letter from Dr. Lillich.  This letter indicated Dr. Lillich examined plaintiff on February 12, 2004.  This letter also included limitations Dr. Lillich found to be present. We find the current record provided the ALJ with the necessary evidence to make an informed decision regarding plaintiff's RFC.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 16th day of January 2007.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

13